**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| GLORIA OKOLIE, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:07-CV-485-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Gloria Okolie brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Okolie applied for disability benefits on September 7, 2004, alleging disability commencing July 8, 2004. (Tr. 61). She met the insured status requirements at all times relevant to the administrative decision.

After her disability application was denied initially and on reconsideration, Okolie requested

a hearing before an administrative law judge (the "ALJ").  ALJ Herbert J. Green held a hearing on July 11, 2006, in Fort Worth, Texas.  (Tr. 268).  Okolie was represented by counsel.  On September 27, 2006, the ALJ issued a decision that Okolie was not disabled because she had the residual functional capacity (RFC) to perform a modified range of sedentary work.[1]  (Tr.17-24).   The Appeals Council denied Okolie's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 5).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations.  *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 404.1520(e).

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  20 C.F.R. § 404.1567(a).

And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

Whether the Commissioner's decision is supported by substantial evidence and consistent with relevant legal standards.

D.   ADMINISTRATIVE RECORD

  1.   Medical Record[2]

Okolie suffered from left knee pain as early as 2002, and was diagnosed with severe arthritis and varus deformity.[3] (Tr. 127-29, 198, 212). On August 24, 2004, nurse practitioner Diane Cook examined Okolie, who reported needing a left knee replacement and recently losing her job. Okolie complained of being unable to stand for any length of time, and edema was observed in the affected knee. Cook prescribed pain medication and advised Okolie to contact her insurance company to find an orthopedic specialist. (Tr. 193).

On April 15, 2005, Okolie consulted orthopedic surgeon Russell Wagner, M.D., for significant pain in her left knee. (Tr. 212). X-rays confirmed medial compartment arthritis and varus deformity. Wagner discussed Okolie's options, including an osteotomy[4] versus a knee replacement, and expressed reluctance to perform a knee replacement because of Okolie's young age. (Tr. 212). On May 23, 2005, Okolie underwent surgery consisting of a left knee proximal tibial osteotomy. (Tr. 207-09).

X-rays taken six weeks showed that the proximal tibia had translated a couple of millimeters from its original position, but the correction had been maintained and the hardware was intact. Okolie was using a walker, but was instructed to put more weight on her knee and progress to the

---

[2] The Commissioner found that Okolie has a number of physical and mental impairments, but in her brief, Okolie focuses on the objective evidence related to her knee impairment and the credibility of her subjective complaints about her knee. A review of the medical record will be similarly limited in scope.

[3] Varus refers to a "knock-kneed" position, denoting a deformity in which the angulation of the part is toward the midline of the body. DORLAND'S MEDICAL DICTIONARY 2054 (31st ed. 2007).

[4] An osteotomy involves the surgical cutting of a bone. *Id.* at 1370.

use of a cane. (Tr. 210). During an office visit in August, Okolie reported soreness and continued to use her cane, but she was able to put full weight on her knee. She exhibited full extension in her knee with flexion past 120 degrees. There was mild swelling at the knee. (Tr. 210). Wagner again noted that the x-rays showed a loss of the surgical correction, but Okolie exhibited valgus[5] alignment on the x-rays and clinically. (Tr. 210). Okolie also began a rehabilitation program, but range of motion in her knee was limited due to pain. (Tr. 214-18). No neurological abnormalities were observed on examination, but physical therapy was discontinued pending a second opinion about the cause of persistent swelling and pain in Okolie's left knee. (Tr. 213-18).

Okolie saw Andrew Cottingham, M.D., on October 27, 2005, for knee, shoulder, and low back pain. (Tr. 237-39). On examination, Cottingham noted some swelling in Okolie's left knee, and she had a decreased range of motion in her knee secondary to pain. She was able to walk on her toes and heels without difficulty, but her gait was antalgic and she used a cane for ambulation. Cottingham recommended conservative pain relief measures. (Tr. 239).

2.  Administrative Hearing

Okolie testified that she was born April 26, 1960. She completed high school and training as a phlebotomist, and had worked as a nursing assistant and phlebotomist. (Tr. 74, 271-73). Okolie testified that she had not worked since July 2004 because of knee, ankle, and back problems. (Tr. 273). Okolie testified that her husband did most of the cleaning and cooking. She spent most of the day sitting or lying in bed. She occasionally went shopping or attended church if she felt well enough, and saw her physician routinely for pain management. (Tr. 274-76, 279-80). Okolie

---

[5] Valgus refers to angulation of a part away from the midline of the body. *Id*. at 2048.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5 of 13**

estimated that she could walk half a block and could sit or stand for thirty minutes at a time. (Tr. 280).

Vocational expert Donna Humphries testified that the job of nurse's aide was semi-skilled work that required medium exertion, and the job of phlebotomist was semi-skilled work that required light exertion. The ALJ asked Humphries to consider the following hypothetical:

> I want you to assume an individual the claimant's age, education, and work history. Assume further this individual is limited to sedentary work. The individual could sit or stand at their option, could—has a less than moderate concentration deficit, and the individual can only work in a dust, fume, chemical free and climate controlled environment. Are there any jobs in the national economy such and [sic] individual could perform?

(Tr. 281). Humphries testified that there would be work as a general office clerk, with approximately 25,000 jobs in the nation; interviewing clerk, with approximately 15,000 jobs in the nation; or surveillance system monitor, with approximately 15,000 jobs in the nation. All of these jobs were unskilled. (Tr. 281). Humphries testified that unscheduled work breaks or excessive rest periods would preclude the performance of any of the jobs she had identified. (Tr. 282).

    3.    ALJ Decision

The ALJ found that Okolie had not engaged in substantial gainful activity since July 8, 2004, and that she had numerous severe impairments: obesity, with chronic joint complaints; osteoarthritis of the left knee, status post surgery; osteoarthritis of the right shoulder; lumbar spondylosis; occasional exacerbations of asthma; and history of depression. The ALJ found that Okolie had no impairment or combination of impairments meeting or equaling a listed impairment. (Tr. 18). Proceeding with the sequential evaluation process, the ALJ found that Okolie retained the residual functional capacity (RFC) for sedentary work, limited to jobs where she is allowed to sit or stand,

at her option; that can be performed by an individual with a less than moderate concentration deficit; and that can be performed in a dust-free, fume-free, chemical-free, climate-controlled environment. (Tr. 21). Although Okolie was unable to perform her past relevant work, the ALJ found that there were a significant number of other jobs available in the national economy that Okolie could perform. (Tr. 23). The ALJ concluded that Okolie was not disabled or entitled to disability insurance benefits. (Tr. 24).

    4.    Appeals Council Evidence

Okolie submitted additional medical records while her case was pending before the Appeals Council. During a follow-up visit in June 2006, Wagner noted that x-rays showed that the osteotomy site had less correction that he had initially thought. Plans were made to remove the osteotomy plate to relieve the pain that Okolie was experiencing. (Tr. 260). The hardware was surgically removed on July 17, 2006, and Okolie was placed on crutches for several weeks. (Tr. 258). During the surgery, it was discovered that one of the screws in the plate had broken. (Tr. 258).

On August 9, 2006, Okolie was putting full weight on her knee, although she was limping. Wagner expressed concern that Okolie might not have long-term improvement because the osteotomy plate had "shifted somewhat" after the initial surgery and had not provided the degree of correction that was planned. He directed Okolie to return in six weeks to discuss the possibility of knee replacement surgery if her symptoms warranted that intervention. (Tr. 256). On September 6, 2006, Okolie reported pain around the medial joint and advised that the pain increased when she walked more. (Tr. 254). Wagner opined that a knee replacement procedure probably would be

helpful, but decided to wait and make that decision after Okolie had additional time to recover from the hardware removal. (Tr. 254).

E.  DISCUSSION

Okolie contends that there is new and material evidence, in the form of Wagner's report of the second knee operation, that warrants reversal and remand of this case to the Commissioner. She also contends that the decision is unsupported by substantial evidence and that the ALJ erred in failing to consider all of the treatment records in reaching his determination.

As an initial matter, the court rejects Okolie's assertion that her 2006 treatment records with Wagner constitute new evidence that requires remand under the test set forth in 42 U.S.C. § 405(g), as interpreted and applied by the Fifth Circuit. (Pl. Br. at 4-6). The records she refers to were submitted at the administrative level; thus, the test set forth in § 405(g) for whether evidence newly submitted to the district court requires remand to the Commissioner has no application to this case. Although Okolie asserts that this approach is appropriate because the Appeals Council denied her request for review without considering the new evidence, (Pl. Br. at 4), her assertion is belied by the Appeals Council's written notice, which specifies that the records were considered, but were not found to provide a basis for changing the ALJ's decision. (Tr. 5-8).

The regulations provide a claimant with the opportunity to forward new and material evidence to the Appeals Council for consideration in deciding whether to grant a request for review of an ALJ's decision. *See* 20 C.F.R. § 404.970(b). Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's decision complained of is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The court's role is to consider the administrative record as a whole, which includes the additional evidence

submitted to the Appeals Council, in deciding if the Commissioner's decision is supported by substantial evidence. *See id.* at 337-38. Unpublished Fifth Circuit cases issued in the wake of *Higginbotham* suggest that the courts should avoid remanding cases based on evidence newly submitted to the Appeals Council without meaningful regard for the substantial evidence standard. *See Jones v. Astrue*, 228 Fed. App'x 403, 406-07 (5th Cir. Mar. 29, 2007); *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 281-82 (5th Cir. 2006)(*Higginbotham II*). Instead, the new evidence is to be considered along with all other evidence in the record to determine if it dilutes the record to the point that the ALJ's determination is insufficiently supported. *Higginbotham II*, 163 Fed. App'x at 282. *See also Browning v. Sullivan,* 958 F.2d 817, 823 (8th Cir. 1992).

Okolie asserts that the records relating to her second knee surgery and removal of the osteotomy plate establish a nexus between her subjective complaints and her left knee impairment that was not previously apparent. The ALJ found Okolie's subjective complaints were not credible to the extent she alleged a complete inability to perform any work activity because the complaints were inconsistent with the medical records. In particular, the ALJ noted a successful repair of the varus deformity and the absence of objective medical findings, which had prompted Okolie's physicians to refer her to a pain management specialist for conservative treatment. In addition, the ALJ was persuaded by evidence that Okolie's treating sources consistently encouraged her to lose weight, increase her activity level, and exercise more to prevent deconditioning. The ALJ also found Okolie's daily activities demonstrated a level of functioning that was not consistent with her allegations of disabling pain. (Tr. 21). The ALJ found that neither the objective nor the subjective evidence established an impairment so severe as to preclude a modified range of sedentary work. (Tr. 20-22).

Okolie asserts that Wagner's reports confirm for the first time that she did not have as much correction as planned. But even accepting Wagner's reports does not undermine the existence of substantial evidence to support the ALJ's determination that Okolie was capable of sedentary work with accommodation of the restrictions imposed by her knee problems and other impairments. The report does not undermine objective evidence of clinical alignment in Okolie's knee following the osteotomy or her progress to weight-bearing status after the initial surgery. Okolie also progressed to full weight-bearing after her second surgery, although her pain increased if she walked more. Nor does the report from Okolie's second surgery undermine the intact neurological findings between the first and second surgeries or Okolie's activities during the relevant time period, which the ALJ relied on in his decision. (Tr. 21-22). A review of the record as a whole, including the after-acquired reports submitted to the Appeals Council, confirms the existence of substantial evidence to support the Commissioner's assessment of Okolie's impairments, residual functional capacity, and in turn, her ability to perform the jobs identified by the vocational expert.

Okolie also contends that the ALJ overlooked an August 2004 report by nurse practitioner Diane Cook, which provides objective proof to support Okolie's allegation of disability since July 8, 2004. She complains that the ALJ violated Social Security Ruling 06-3p, which clarifies that the record should reflect consideration of opinions from all medical sources, even if the source is not included in the definition of "acceptable medical sources,"[6] and non-medical sources who have seen

---

[6] "Acceptable medical sources" refer to licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists, who may address matters within their area of training. *See generally* 20 C.F.R. § 404.1513(a). The distinction between "acceptable medical sources" and other healthcare providers is important because only acceptable medical sources can establish the existence of a medically determinable impairment; offer a medical opinion; or be a qualified treating source whose medical opinion may be entitled to controlling weight. SOCIAL SECURITY RULING 06-03p. Information from other sources, however, may provide insight into the severity of an impairment and how it affects the individual's ability to function. *Id.*

the claimant in a professional capacity. *See* 20 C.F.R. § 404.1513(d); SOCIAL SECURITY RULING 06-03p. Nurse practitioners are recognized as medical sources, but not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(d)(1); SOCIAL SECURITY RULING 06-03p. Okolie urges that Cook's notes and comments are the type of records that must be considered because they bear on the severity and duration of her disability.

Contrary to Okolie's criticism, a review of the ALJ's decision reflects that he was aware of Cook's report. The ALJ did not refer to Cook by name, but he did cite those records in listing the materials he reviewed in making his decision.[7] (Tr. 19). Although the ALJ did not refer to the contents of Cook's reports or assessment specifically, Okolie has not demonstrated that this failure was harmful as the ALJ's decision otherwise indicates that he recognized her history of left knee symptoms, (Tr. 18), and he did not deny her claim based on any doubts about the duration of her impairment. In addition, the court agrees with the Commissioner that Cook's notations about Okolie's need for a knee replacement and information that Okolie had lost her job for health reasons are records of comments that Okolie made during her visits with Cook, not medical opinions that Cook arrived at as part of a professional evaluation. (Tr. 193).

Okolie has not demonstrated that the Commissioner's decision is unsupported by substantial evidence given the record as a whole, nor has she shown that the administrative decision is a product of legal error. The Commissioner's decision is entitled to deference and should not be disturbed.

RECOMMENDATION

---

[7] In identifying the various exhibits he reviewed, the ALJ referred to Exhibit 12F, which includes the documentation of Okolie's treatment history with the nurse practitioner. (Tr. 188-94).

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11 of 13**

It is recommended that the decision of the Commissioner be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 18, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 18, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 12 of 13**

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 28, 2008.

   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE